UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

KEITH RIPPEY, JR.,

                                             Plaintiff,      <u>COMPLAINT</u>

                   -against-                25 CV 5792

CITY OF NEW YORK, TARGET CORPORATION d/b/a
Target Store #2850, JONATHAN BOBIN, UNIQUE
BATTLE, and NORBERTO PEREZ,          **JURY TRIAL DEMANDED**

                                    Defendants.
-----------------------------------------------------------------------x

       Plaintiff Keith Rippey, Jr., by his attorneys, Law Office of Gregory P. Mouton, Jr., LLC,

respectfully alleges:

<u>NATURE OF THE ACTION</u>

       1.     This is an action to recover money damages arising out of the violation of Mr.

Rippey's rights under the Constitution of the United States, the Constitution of the State of New

York, and the laws of the State of New York.

<u>JURISDICTION AND VENUE</u>

       1.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth,

Fifth, and Fourteenth Amendments to the Constitution of the United States.

       2.     The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343, and

1367(a).

       3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c).

<u>JURY DEMAND</u>

       4.     Mr. Rippey demands a trial by jury in this action.

## PARTIES

5.      Plaintiff Keith Rippey, Jr. is a resident of the County of Kings, State of New York.

6.      Defendant City of New York is a municipal organization organized under the laws of the State of New York.

7.      Defendant City of New York operates the New York City Police Department ("NYPD"), a department or agency of Defendant City of New York.

8.      The NYPD is responsible for the appointment, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the individually named defendants herein.

9.      At all times relevant herein, Defendant Bobin was an officer, employee, and/or agent of Defendant City of New York.

10.     At all times relevant herein, Defendant Bobin was acting within the scope of his employment with Defendant City of New York.

11.     At all times relevant herein, Defendant Bobin was acting under color of state law.

12.     Defendant Bobin is sued in his individual and official capacities.

13.     At all times relevant herein, Defendant Battle was an officer, employee, and/or agent of Defendant City of New York.

14.     At all times relevant herein, Defendant Battle was acting within the scope of her employment with Defendant City of New York.

15.     At all times relevant herein, Defendant Battle was acting under color of state law.

16.     Defendant Battle is sued in her individual and official capacities.

17.　　At all times relevant herein, Defendant Perez was an officer, employee, and/or agent of Defendant City of New York.

18.　　At all times relevant herein, Defendant Perez was acting within the scope of his employment with Defendant City of New York.

19.　　At all times relevant herein, Defendant Perez was acting under color of state law.

20.　　Defendant Perez is sued in his individual and official capacities.

21.　　Defendant Target Corporation ("Target") is a foreign corporation organized and existing under the laws of the State of Minnesota and qualified to do business in the State of New York.

22.　　Defendant Target owns and operates Target Store #2850 located at 445 Albee Square W, Brooklyn, NY 11201 (the "Target Store").

23.　　At all times relevant herein, Defendant Bobin was an supervisor, employee, and/or agent of Defendant Target.

24.　　At all times relevant herein, Defendant Target authorized Defendant Bobin to detain shoppers, liaise with, and act jointly with the NYPD regarding suspected in-store offenses.

<u>STATEMENT OF FACTS</u>

25.　　On July 18, 2024, Mr. Rippey was lawfully present at the Target Store.

26.　　Upon entering the Target Store with his pet dog, Mr. Rippey began shopping and picking out items that his 71-year old mother asked for him to pickup from the Target Store.

27.　　While in the Target Store, Mr. Rippey went down the dairy isle to get sour cream.

28.　　After grabbing the sour cream and returning to his cart, Mr. Rippey found another basket blocking his.

29.     Mr. Rippey moved the basket and a woman said, "Are you blind?  Are you blind?"

30.     The woman then followed behind Mr. Rippey as he walked through the Target Store and made derogatory comments about him including calling him a "nigger" and stating that he had touched her breast.

31.     The woman followed behind Mr. Rippey for two to three minutes before disappearing.

32.     Upon Mr. Rippey checking out and purchasing his items, he was approached by Defendant Bobin who was working as security at the Target Store.

33.     Defendant Bobin was in his NYPD uniform and displayed his NYPD badge.

34.     Defendant Bobin introduced himself as "Inspector Bobin" and asked if he could speak with Mr. Rippey for a second, and took Mr. Rippey to the side.

35.     Mr. Rippey asked Defendant Bobin if he thought he had stolen something, but Defendant Bobin told Mr. Rippey that that was not what he wanted to speak with him about.

36.     Defendant Bobin asked Mr. Rippey what happened in the past few minutes, to which Mr. Rippey responded, "Nothing, I'm shopping."

37.     Defendant Bobin asked him again what happened, and Mr. Rippey told Defendant Bobin if he had any questions, he should review the video footage from the cameras.

38.     Defendant Bobin commanded Mr. Rippey to have a seat and informed Mr. Rippey was not free to leave the Target Store.

39.     Defendant Bobin then walked over to the security desk and reviewed the video of Mr. Rippey's time at the Target Store.

40.     As Mr. Rippey sat confined at the Target Store, he called his mother and asked her to come to the Target Store to get his dog.

41.     Upon information and belief, Defendant Bobin had contacted the NYPD and requested additional officers to respond to the scene to assist in arresting Mr. Rippey.

42.     Defendants Battle and Perez responded to the Target Store.

43.     Once inside of the Target Store, Defendants Battle and Perez approached the desk that Defendant Bobin was at and spoke with him.

44.     While speaking with Defendant Bobin, Defendants Battle and Perez also reviewed the video footage from Mr. Rippey's time in the Target Store.

45.     After speaking with Defendant Bobin and watching the video footage, upon information and belief, the individual defendants jointly determined that Mr. Rippey would be handcuffed and transported to the police precinct.

46.     Defendant Battle and Perez walked over to Mr. Rippey and told him to place his hands behind his back.

47.     Mr. Rippey demanded to know what he was under arrest for, stating that they had just watched the footage and they had no reason to arrest him.

48.     Defendants Battle and Perez refused to tell Mr. Rippey what he was being arrested for.

49.     Mr. Rippey was placed in handcuffs inside of the Target Store and then humiliatingly walked out of the Target Store, downstairs via an elevator, and then out of the building to a police car.

50.     By this time, Mr. Rippey's mother was also present inside of the Target store, and witnessed her son being paraded out of the Target Store in handcuffs.

51.     Mr. Rippey was searched twice, once by Defendant Battle and once by Defendant Perez, before being placed into the police car.

52.     Mr. Rippey was transported to the NYPD's 84th Precinct.

53.     Mr. Rippey was then searched again upon entering the precinct.

54.     Mr. Rippey was also questioned about his time at the Target Store for several minutes after arriving at the precinct.

55.     When questioned, Mr. Rippey told the officers and members of the NYPD, including Defendants Battle and Perez, that he knew the video showed him doing nothing while shopping at the Target Store.

56.     Mr. Rippey was held in the cell at the 84th Precinct for about five hours before he was released with no charges.

57.     Mr. Rippey learned he was being released because Defendant Battle approached him as he was in the cell and stated, "Keith Rippey… I am so sorry.  We are releasing you right away.  Here's your stuff."

58.     As Defendant Battle released Mr. Rippey and returned his items to him, Defendant Battle said, "I'm sorry, but apparently she was paying more attention to you than you were her."

59.     Mr. Rippey suffered damage as a result of Defendants' actions.  Mr. Rippey , *inter alia*, deprived of liberty and suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, and damage to reputation.

60.     On or about August 27, 2024, Mr. Rippey served upon, presented, and filed with Defendant City of New York a Notice of Claim in writing.

61.     Defendant City of New York has refused or neglected to make any adjustment or payment.

FIRST CAUSE OF ACTION
*Unlawful Stop (Federal)*

62.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

63.     Although Defendant Bobin was working off duty on behalf of Defendant Target, Defendant Bobin asserted his official police authority in the course of said work by wearing his police uniform, displaying his police badge, introduced himself as an Inspector for the NYPD, and conducted the unlawful stop.

64.     Defendant Bobin violated the Fourth and Fourteenth Amendments because he stopped Mr. Rippey without reasonable suspicion or probable cause.

65.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

SECOND CAUSE OF ACTION
*Unlawful Stop (State)*

66.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

67.     Although Defendant Bobin was working off duty on behalf of Defendant Target, Defendant Bobin asserted his official police authority in the course of said work by wearing his

police uniform, displaying his police badge, introduced himself as an Inspector for the NYPD, and conducted the unlawful stop.

68.     Defendant Bobin was acting in furtherance of and within the scope of his employment with both Defendants City of New York and Target.

69.     Defendant Bobin violated the New York State Constitution, Article I, § 12 because he stopped Mr. Rippey without reasonable suspicion or probable cause.

70.     Defendant City of New York and Target are liable for the unlawful stop of Mr. Rippey under a theory of *respondeat superior*.

71.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

THIRD CAUSE OF ACTION
*Unlawful Search (Federal)*

72.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

73.     Defendants Battle and Perez violated the Fourth and Fourteenth Amendments because they searched Mr. Rippey without reasonable suspicion or probable cause.

74.     Defendants Target and Bobin are liable for the unlawful searches of Mr. Rippey in that the searches were conducted incident to Mr. Rippey being placed into handcuffs at the direction of Defendants Target and Bobin.

75.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

*Unlawful Search (State)*

76.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

77.     Defendants Battle and Perez violated the New York State Constitution, Article I, § 12 because they searched Mr. Rippey without reasonable suspicion or probable cause.

78.     Defendant City of New York is liable for the unlawful search under a theory of *respondeat superior*.

79.     Defendants Target and Bobin are liable for the unlawful searches of Mr. Rippey in that the searches were conducted incident to Mr. Rippey being placed into handcuffs at the direction of Defendants Target and Bobin.

80.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## FIFTH CAUSE OF ACTION
*False Arrest (Federal)*

81.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

82.     The individual defendants and violated the Fourth and Fourteenth Amendments because they arrested Mr. Rippey without probable cause.

83.     Defendants Target and Bobin are liable for the false arrest of Mr. Rippey in that the Mr. Rippey was placed into handcuffs and taken to the 84th Precinct at the direction of Defendants Target and Bobin.

84.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

SIXTH CAUSE OF ACTION
*False Arrest (State)*

85.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

86.     The individual defendants violated the New York State Constitution, Article I, § 12 because they arrested Mr. Rippey without probable cause.

87.     Defendants Target and Bobin are liable for the false arrest of Mr. Rippey in that the Mr. Rippey was placed into handcuffs and taken to the 84th Precinct at the direction of Defendants Target and Bobin.

88.     Defendant City of New York is liable for false arrest under the theory of *respondeat superior*.

89.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## SEVENTH CAUSE OF ACTION
### *Failure to Intervene (Federal)*

90.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

91.     Those defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct; had an opportunity to prevent such conduct; had a duty to intervene and prevent such conduct; and failed to intervene.

92.     Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States.

93.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## EIGHTH CAUSE OF ACTION
### *Negligent Supervision & Retention*

94.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

95.     Defendants City of New York and Target knew or should have known of the individual defendants' propensity for the conduct alleged herein.

96.     Defendants City of New York and Target failed to take any steps to protect Mr. Rippey from the actions and/or inactions of the individual defendants.

97.     The injuries sustained by Mr. Rippey were the result of the negligent retention and/or supervision of the individual defendants by Defendants City of New York and Target.

98.     The individual defendants were supervisors, co-employees, and/or working together at the NYPD.

99.     The individual defendants were negligent in that they failed to ensure that their co-employees provided proper supervision.

100.    Despite knowing that their subordinates and/or co-employees were negligent, Defendants continued to employ the individual defendants, and took no steps to rectify their actions.

101.    As a result of the foregoing, Mr. Rippey was caused to suffer severe personal injuries.

102.    Said injuries were the result of the negligent, careless, reckless, wanton, illegal, and improper acts of the defendants, their agents, servants, or employees, including, but not limited to, failing to supervise the individual defendants; in allowing Mr. Rippey's welfare to become endangered; and in otherwise being negligent.

103.    As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

<u>NINTH CAUSE OF ACTION</u>
*Negligence*

104.    Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

105.    Defendants failed to take any steps to protect Mr. Rippey, including providing supervision.

106.     As a result of the foregoing, Mr. Rippey was caused to suffer severe personal injuries.

107.     Said injuries were the result of the negligent, careless, reckless, wanton, illegal, and improper acts of the defendants, their agents, servants, or employees, including, but not limited to, failing to supervise the individual defendants; in allowing Mr. Rippey's welfare to become endangered; and in otherwise being negligent.

108.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

TENTH CAUSE OF ACTION
*Assault*

109.     Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

110.     The individual defendants intentionally acted to place Mr. Rippey in apprehension of imminent harmful or offensive bodily contact.

111.     Mr. Rippey suffered apprehension of imminent harmful or offensive bodily contact.

112.     Defendant City of New York and Target are liable under a theory of *respondeat superior*.

113.     As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## ELEVENTH CAUSE OF ACTION
*Battery*

114.    Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

115.    The individual defendants intended to make bodily contact with Mr. Rippey.

116.    The individual defendants made bodily contact with Mr. Rippey.

117.    Consequently, Mr. Rippey suffered bodily contact which was harmful, offensive, and without Mr. Rippey's consent.

118.    Defendant City of New York and Target are liable under a theory of *respondeat superior*.

119.    As a result of the foregoing, Mr. Rippey has been damaged in a sum of money having a present value that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of this matter.

## TWEFLTH CAUSE OF ACTION
*Conspiracy under 42 U.S.C. § 1983*

120.    Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

121.    The individual defendants and Defendant Target jointly participated in the deprivation of Mr. Rippey's constitutional rights as set forth herein.

122.    The individual defendants and Defendant Target conspired in the deprivation of Mr. Rippey's constitutional rights by collectively lying about Mr. Rippey's actions and conduct; and by suppressing and/or ignoring known exculpatory evidence in order to support the individual defendants' fabricated version of the events.

123.    As a result of the individual defendants' and Defendant Target's malicious efforts to damage Mr. Rippey, Mr. Rippey's liberty was restricted, he was restrained, subjected to handcuffing, and, among other things, falsely arrested and searched.

124.    As a direct and proximate result of this unlawful conduct, Mr. Rippey sustained the damages alleged herein.

### THIRTEENTH CAUSE OF ACTION
*Monell*

125.    Mr. Rippey repeats and re-alleges each and every allegation as if fully set forth herein.

126.    At all relevant times, Defendant City of New York, through the NYPD and its Special Victims Division ("SVD") and patrol commands, maintained policies, customs, and practices governing the investigation of sexual-offense complaints, including how officers assess credibility, corroborate allegations, collect and preserve evidence, and determine whether to arrest or refer a case for prosecution.

127.    Defendant City of New York failed to provide NYPD officers, both patrol officers who are first responders and SVD detectives who are assigned to sex-crime investigations, with adequate training on core investigative competencies necessary to avoid unconstitutional seizures and prosecutions, including but not limited to:

   a.    differentiating between victim-safety steps and arrest-driven tactics;

   b.    assessing complainant/witness credibility using neutral, evidence-based methods;

   c.    promptly obtaining and reviewing readily available exculpatory evidence (video, digital communications, access logs, alibi witnesses);

d.   properly documenting and disclosing exculpatory and impeachment material;

e.   handling delayed reports, recantations, inconsistencies, or motive-to-fabricate indicators;

f.   coordinating with medical/forensic personnel and preserving forensic evidence;

g.   lawful interrogation practices and the limits of "arrest first, investigate later"; and

h.   supervisory review before effectuating an arrest based primarily on an uncorroborated accusation.

128.   Defendant City of New York's training regimen for sex-crime investigations was so deficient that it amounted to no training at all on critical decision points that predictably give rise to Fourth and Fourteenth Amendment violations, especially arrests without probable cause and prosecutions tainted by the suppression of exculpatory facts.

129.   The need for such training was obvious to City of New York policymakers because sexual-offense investigations routinely turn on credibility assessments, time-sensitive evidence (video, digital metadata), and specialized trauma-informed interviewing; without proper training, a plainly foreseeable consequence is unconstitutional arrests of the accused based on uncorroborated allegations.

130.   Prior to Plaintiff's arrest, the Defendant City of New York had actual and constructive notice, through internal audits, litigation, and public reports, of recurring investigative failures in sex-crime cases, including arrests made without corroboration, failure to obtain or

review readily available exculpatory video, cursory witness interviewing, and inadequate supervisory oversight.

131. Since at least 2010, Defendant City of New York has been on formal notice that the SVD was chronically understaffed, under-trained, and employing investigative practices that undermined the accuracy and reliability of sex-crime investigations.

132. On March 27, 2018, the NYC Department of Investigation's Office of the Inspector General for the NYPD ("DOI/OIG") issued a public report titled "An Investigation of NYPD's Special Victims Division—Adult Sex Crimes," identifying systemic deficiencies in SVD, including failure to implement recommended staffing increases and assignment of inexperienced investigators.

133. The DOI/OIG Report specifically found that, despite an internal working group's recommendation that SVD add at least 26 investigators to handle adult sex-crime caseloads, NYPD did not implement that recommendation, leaving investigators with excessive caseloads and inadequate time to conduct thorough investigations.

134. The DOI/OIG Report further concluded that SVD investigators lacked essential training and supervision, resulting in interviews and investigative steps that deviated from best practices and compromised case integrity.

135. On June 26, 2018, NYPD publicly responded to the DOI/OIG Report, acknowledging and addressing its findings at the highest policy levels, but electing to make limited structural changes (e.g., centralizing felony sex-crime work within SVU) while leaving the core deficiencies in staffing, training, and supervision materially unresolved.

136.     On June 30, 2022, the U.S. Department of Justice announced a pattern-or-practice investigation into the NYPD's handling of sexual assault allegations, with a focus on policies, training, staffing, and evidence collection, placing Defendant City of New Yrok on renewed and ongoing notice that SVD's deficiencies were systemic and persisted years after the DOI/OIG Report.

137.     The NYC Council likewise held oversight proceedings and issued public statements acknowledging longstanding failures within SVD and the need for accountability and reform, further confirming policymakers' awareness of the unit's deficiencies.

138.     Public caseload data and reporting from 2018 through 2023 showed that SVD adult-squad caseloads in multiple boroughs remained elevated notwithstanding the City's asserted reforms, corroborating that the City failed to supply sufficient personnel, training, and supervision to address known investigative shortcomings.

139.     Defendant City of New York's policymakers knew to a moral certainty that NYPD officers and SVD detectives would regularly confront the recurring task of receiving, screening, and investigating allegations that implicate sex-crime classifications, credibility assessments, and evidence-gathering choices.

140.     Despite years of formal notice from DOI/OIG, the NYC Council, and DOJ, and the NYPD's own written response, Defendant City of New York failed to adopt and implement adequate training, supervision, staffing, and auditing to correct SVD's well-documented deficiencies, reflecting deliberate indifference to the obvious need for such measures.

141.     The risk that constitutionally deficient seizures and searches would result from these investigative deficiencies was patently foreseeable: inexperienced and overburdened

investigators applying flawed interviewing and classification practices predictably produce unreliable probable-cause assessments and unjustified custodial actions.

142. Despite that notice, Defendant City of New York failed to act: it did not implement adequate training modules, practical scenario-based instruction, checklists, or competency assessments to ensure that officers gather and evaluate exculpatory evidence before arresting a suspect for sexual assault.

143. Defendant City of New York likewise failed to train line supervisors and SVD leadership to enforce those investigative standards, resulting in a custom where patrol officers and detectives routinely default to arrest on an untested accusation, assuming prosecutors will "sort it out later."

144. Defendant City of New York's failure-to-train was systemic, not isolated. On information and belief, prior incidents, including civil rights lawsuits and suppression rulings, put Defendant City of New York on further notice that NYPD personnel were: (i) arresting suspects in sex-crime cases without reasonable investigation; (ii) omitting exculpatory facts from paperwork; (iii) ignoring known exculpatory facts and evidence; and (iv) neglecting simple steps (e.g., checking nearby cameras) that would have dispelled suspicion.

145. Defendant City of New York's policymakers were deliberately indifferent to this known risk. They chose not to institute readily available safeguards, such as mandatory pre-arrest corroboration protocols for sex-crime allegations, required review of time-proximate video, contemporaneous documentation of investigative steps, and sign-off by a trained supervisor, despite the obviousness that failing to do so would result in constitutional violations.

146.     Defendant City of New York's inadequate training was the moving force behind the violations in this case. In Plaintiff's investigation:

    a.    Officers arrested Plaintiff for sexual assault despite reviewing the exculpatory video showing that Mr. Rippey had not committed any crime;

    b.    Officers credited an accusation without basic corroboration and ignored material inconsistencies and motives to fabricate in the face of exculpatory evidence; and

    c.    Supervisors approved or failed to stop the arrest despite the lack of corroboration and the availability of quick investigative steps that would have dispelled suspicion.

147.     Had Defendant City of New York provided adequate training, Mr. Rippey would not have been arrested and prosecuted, or the arrest would have been promptly averted.

148.     The unconstitutional seizure and searches alleged here were proximately caused by Defendant City of New York's failure to train, supervise, and adequately staff SVD and responding officers: the officers relied on a cursory, credibility-blind process that mirrored the very practices identified by DOI/OIG (inexperience, inadequate training, and unsound interviewing/assessment), leading to the misclassification of facts, disregard of exculpatory indicators, and an arrest/search unsupported by probable cause.

149.     Had Defendant City of New York implemented the staffing increases, training, supervision, and audit mechanisms identified in the DOI/OIG Report, and reinforced by subsequent oversight and the DOJ investigation, the officers would have been better equipped to conduct a constitutionally sufficient investigation before seizing and searching Plaintiff.

150. Defendant City of New York's persistent refusal to remedy the known SVD deficiencies, spanning from at least the 2018 DOI/OIG Report through the 2022 DOJ pattern-or-practice announcement and beyond, constitutes a municipal policy/custom of inadequate training, supervision, and staffing in sex-crime investigations that was the moving force behind the constitutional violations suffered by Plaintiff.

151. Defendant City of New York's limited structural adjustments and public assurances, unaccompanied by effective increases in trained personnel, documented supervisory review, and meaningful auditing, demonstrate a conscious choice to continue the deficient status quo in the face of an obvious need for reform.

152. Defendant City of New York's failure-to-train was reinforced by a de facto policy rewarding "quick closes" and clearance statistics over thorough, constitutionally sound investigation in sex-crime cases, further encouraging arrests before investigation.

153. These failures were closely related to and proximately caused Plaintiff's injuries, including unlawful seizure, loss of liberty, emotional distress, reputational harm, legal expenses, and other damages.

154. These policies, practices, and customs were the moving force behind the injuries of Mr. Rippey.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Mr. Rippey respectfully requests judgment against Defendants as follows:

(a)     Compensatory damages against all defendants, jointly and severally, on each cause of action;

(b)      Punitive damages against the individual defendants, jointly and severally, on each cause of action;

(c)      Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d)      Such other and further relief as this Court deems just and proper.

Dated: New York, New York
       October 15, 2025

By:    /s/
        Gregory Paul Mouton, Jr., Esq.
        Law Office of Gregory P. Mouton, Jr., LLC
        *Attorneys for Plaintiff Keith Rippey, Jr.*
        10 Times Square, 6th Floor
        New York, NY  10018
        Phone:  (646) 706-7481

25 CV 5792

---

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KEITH RIPPEY, JR.,

Plaintiff,

-against-

CITY OF NEW YORK, TARGET CORPORATION d/b/a Target Store #2850, JONATHAN BOBIN, UNIQUE BATTLE, and NORBERTO PEREZ,

Defendants.

---

COMPLAINT

---

LAW OFFICE OF GREGORY P. MOUTON, JR., LLC

10 Times Square, 6th Floor
New York, NY  10018
Phone & Fax: (646) 706-7481